# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

ADAM PATTON                                                          PETITIONER
*ADC #169395*

V.                              Case No. 4:21-cv-000259-KGB-JTK

DEXTER PAYNE                                                         RESPONDENT
*Director, ADC*

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Kristine Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection and (2) be received by the Clerk of this Court within 14 days of the entry of this Recommendation. By not objecting, you may waive the right to appeal questions of fact. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record.

## I.   Introduction

Petitioner Adam Patton ("Patton") is an inmate in the Arkansas Division of Correction and is currently serving a 26-year sentence after being convicted of two counts of rape and two counts of incest in Desha County Circuit Court. Pending before this Court is his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Patton is represented by counsel, and he alleges that he was denied his right to counsel during his state trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Based on the reasoning set forth below, the undersigned recommends that Patton's habeas petition be denied, that this case be dismissed with prejudice, and that a certificate of appealability not be issued.

## II. Background

### A. *Pretrial & Trial Proceedings*

On August 19, 2016, the State formally charged Patton with three counts of rape after his arrest on July 31, 2016. It later filed two counts of incest against him on May 16, 2017. The victim was his son.

Before the counts of incest were filed, Patton was released on bond conditions. While out on bond and awaiting trial, he won $1,000,000 while playing the lottery and received about $680,000 after taxes to take home in March 2017. His trial was set to begin on October 3, 2017, but on September 1, Patton's pro bono attorney, Greg Robinson ("Robinson"), moved to withdraw from representing Patton based on a lack of communication between the two and Patton's failure to update his contact information.

After a hearing on the motion to withdraw on September 18, the state trial court granted Robinson's motion. In doing so, the court stated to Patton: "I still have the responsibility to get you counsel or give you time to get counsel." (Doc. No. 4-8, p. 105). Patton requested additional time, and the trial court informed him that he needed to find new counsel within the next two months and to update the court once he had done so. The court then rescheduled a pretrial hearing on January 22, 2018, and reset the trial dates to February 6–9, 2018.

At the pretrial hearing, the state trial court asked Patton whether he had hired counsel because an entry of appearance had not been filed on his behalf. Patton stated that he had not

retained new counsel because he and the prospective lawyers were unable to reach a financial agreement. The following colloquy occurred concerning Patton's representation:

> PATTON:  I haven't, I guess, found somebody that we could come to an agreement on, moneywise, financially. I was here today to ask you for, if maybe the Courts would appoint me one, to say the evidence and all that the Courts have against me, I guess I'm unprepared.
>
> You know, I have spoke[n] to a few different lawyers. We just can't come to an agreement, Your Honor, so I'm kind of at your mercy.
>
> THE COURT:  What is your income?
>
> PATTON:  Right now, Your Honor, not a lot. You know, I ran across a little stroke of luck a little while back with the lottery, and all that I've been living off of, me and my family. As far as income weekly, there isn't any.
>
> THE COURT:  How much money do you have left from your winnings?
>
> PATTON:  Not - - Not a lot to put my hands on actually. Like I say, not - -
>
> THE COURT:  Well, that doesn't answer my question.
>
> PATTON:  Well, yes, sir. I can't really tell you. Honestly, cash money in my pocket, none. Don't have - -
>
> THE COURT:  Where [are] the winnings . . . ?
>
> PATTON:   Well, there's, there was remodeling of my mother's home, vehicles for my wife and my oldest son, one for me, one for my mother. So - -
>
> THE COURT:  You're not indigent. I'm not going to appoint you a lawyer. It's clear to me that you are trying to take advantage of the system. Now, you're going to trial in two weeks with or without a lawyer. I don't care.
>
> PATTON:  Okay.
>
> . . . .
>
> THE COURT:   Well, I'm not going to appoint him counsel. He is not indigent. And that's what I, the Constitution requires is me to appoint [the] indigent counsel. Now, if he wants to go to trial without a lawyer, he's made that choice as far as I'm concerned. Just his statements regarding his disposition of his lottery winnings is clear to me that he had not taken care of his personal business and he's putting himself in this position. I so find. So we'll just go from there.

You're ordered back to Court for jury trial February 6th - - we're going to set that date right now - - at 8:30 a.m.

(Doc. No. 4-8, pp. 108–11).

On February 7, 2018, the parties appeared before the state trial court and discussed a few preliminary matters before the start of trial. Patton, still without counsel, represented himself. As a final matter, the parties discussed the trial court's finding that Patton was non-indigent and, therefore, financially capable of retaining counsel. The parties engaged in the following discourse:

PROSECUTOR:  With the situation we're in with Mr. Patton being deemed not to be indigent, I didn't know if there was a record made as to the fact that he did win the lottery, he acknowledge that, the amount that he won and when that was. . . . I don't think the record reflects that. And I would ask that, the Court would inquire as to that so that the record would reflect that, that winnings and earnings.

PATTON:  I believe it was around the first of March or so, Your Honor. It was a little over six hundred and eighty thousand ($680,000) is what I left there with.

THE COURT:  Okay. So around March 1st of 2017?

PATTON:  Yes, sir.

. . . .

THE COURT:  From the Arkansas Lottery? That was after taxes?

PATTON:  Yes, sir.

THE COURT: Okay.

PROSECUTOR:  And that was while this case was pending?

THE COURT:  Yes.

PATTON:  While I was out on bond.

THE COURT:  Of course, you've had a lawyer in this case before.

PATTON:  Yes, sir.

And Your Honor, I did search for counsel, you know. And, like I say, everybody has heard about the lottery and since they know, you know, the number they threw out there is just astronomical and I couldn't, you know, I couldn't justify paying somebody those five digits, you know, numbers to talk about something they had no idea.

I mean, I understand they are more knowledgeable about, your, the way things go in here. But as far as what me and my son went through - -

THE COURT:  Well, you've got some serious charges, Mr. Patton.

PATTON:  Yes, sir.

THE COURT:  I tried to talk to you about this and I've tried to encourage you to get your own lawyer. I realize that the fact of your lottery winnings may be . . . public knowledge, so that, you know, maybe people try to gouge you or whatever. I don't know. But it would seem to me that if you look long and hard enough, you could find somebody to represent you for a reasonable sum of money.

Because of the serious nature of the charges - -

PATTON:  Yes, sir.

THE COURT:  - -  you might be getting quoted some high fees. I don't know. I don't know all that's involved in it. But you certainly have resources to hire counsel and that's the reason I ruled the way I did.

PATTON:  Yes, sir.

(Doc. No. 4-8, pp. 115–17).

Afterward, jury selection occurred, and the trial proceeded. The jury eventually convicted Patton of two counts of rape and two counts of incest, and it sentenced him to 10 years' imprisonment on each rape count and three years' imprisonment on each incest count. He was sentenced to a total of 26 years in prison.

B.  *Direct & Collateral Appeals*

Patton appealed his convictions to the Arkansas Court of Appeals. On appeal, he was appointed counsel after that court determined him to be indigent. Through his counsel, he argued that "[t]he trial court erred in granting retained counsel's motion to withdraw before assuring that

5

new counsel had been retained, [that] indigent counsel had been appointed, or [that he had] voluntarily and intelligently waived the assistance of counsel." (Doc. No. 4-1, p. Arg 1). He stated that he did not have the opportunity to execute an affidavit of indigency for the state trial court's review, that he spent his lottery winnings, that he did not have any income, and that the trial court failed to ask about his debts and liabilities. He further asserted that the trial court forced him to proceed to trial without counsel.

In response, the State contended that while Patton did not waive his right to counsel, he interfered with the administration of justice and, as a result, forfeited that right because he had the financial means and time to hire counsel but failed to do so. The Arkansas Court of Appeals agreed and held that the trial court did not abuse its discretion in finding that Patton did not want to hire counsel and instead chose to proceed in representing himself. In other words, there was no abuse of discretion because Patton had forfeited his right to counsel after having won $680,000 while free on bond and informing the trial court that he chose not to hire counsel because he was being quoted fees that he deemed unjustifiable. His petition for rehearing was denied.

Patton subsequently petitioned the Supreme Court of the United States, which denied further review. He then filed a Rule 37 petition for post-conviction relief, contending that he was ineffective in representing himself. The State argued that it was impossible for him to have received ineffective assistance of counsel because he chose to represent himself by forfeiting his right to counsel. The trial court agreed with the State and denied that petition. Patton did not appeal that court's decision.

C.  *Federal Habeas Petition*

Under 28 U.S.C. § 2254, Patton filed his pending petition for writ of habeas corpus, alleging that he was denied his right to counsel at trial in violation of the Sixth and Fourteenth

Amendments to the United States Constitution. He discusses extensively that he neither waived nor forfeited his right to counsel. He requests that this Court reviews his non-waiver claim *de novo* because it was not decided on the merits in the state courts. He further asserts that pursuant to 28 U.S.C. § 2254(d)(2), the holding rendered by the Arkansas Court of Appeals—affirming that he had forfeited his right to counsel—is based on an unreasonable determination of the facts.

The Arkansas Division of Correction Director, Dexter Payne, responded to the petition, maintaining the position that Patton forfeited his right by failing to hire counsel when he had ample time and financial means to do so. The undersigned has thoroughly reviewed both parties' filings.[1]

## III.   Discussion

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court grants habeas relief if the state court's adjudication [of a claim on the merits] "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented."

*Page v. Burger*, 406 F.3d 489, 493 (8th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(1)-(2)). This deferential standard is limited to claims that were decided on the merits. *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011). "Absent state court adjudication [on the merits], a federal habeas court will apply *de novo* review." *Id.*

Here, Patton argues that the denial of his Sixth Amendment right to counsel was the result of a decision that was based on an unreasonable determination of the facts in light of the evidence presented at his state trial. The state court's determination of facts is unreasonable "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual

---

[1] In his habeas petition, Patton also requests to be released on bail pending this Court's review of his petition. The undersigned denied his initial request on June 9, 2021, and subsequently denied his motion for reconsideration on February 24, 2023.

findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).

Moreover, it is undisputed that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. *See also* U.S. Const. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"). The Supreme Court has held that the Sixth Amendment also includes the right of the accused to represent themselves at trial. *Faretta v. California*, 422 U.S. 806, 832–34 (1975). The right of self-representation requires that the accused knowingly, intelligently, and voluntarily waive their right to counsel. *Id.* at 835–36. The accused, however, "should be made aware of the dangers and disadvantages of self-representation. Warnings of the pitfalls of proceeding to trial without counsel must be rigorously conveyed." *United States v. Stanley*, 891 F.3d 735, 738 (8th Cir. 2018) (cleaned up).

Even if there is no knowing, intelligent, and voluntary waiver of the right to counsel, the Eighth Circuit has held that defendants can forfeit that right and other constitutional rights through their own conduct or actions. *United States v. Thompson*, 335 F.3d 782, 785 (8th Cir. 2003) (citing cases where courts have acknowledged that defendants could forfeit the right to be present at trial due to disruptive behavior, the right to confront if they caused witnesses to be unavailable for trial, the right to appeal if they remain at large during the pendency of the appeal, and the right to counsel if abusive toward that counsel). *Thompson* involves the right to counsel on appeal and threatening behavior towards that counsel, but other districts in this circuit have held that a defendant exhibiting less egregious behavior during trial proceedings can forfeit his right to counsel.

For example, in the Eastern District of Missouri, a judge concluded that a defendant forfeited his right to have new counsel appointed to represent him at proceedings before the court

because of that defendant's failure to cooperate with his third appointed attorney. *United States v. Knox*, No. 4:07-CR-582-RWS-DDN, 2008 WL 3305684, at *4, *6 (E.D. Mo. Aug. 7, 2008). The judge found that the defendant had repeatedly made unreasonable complaints and unfounded objections against his second and third court appointed attorneys. That judge ultimately denied the defendant's motion for replacement of his third appointed attorney and ordered the defendant to represent himself if he did not allow his attorney to continue representing him. *Id.* at *6. In reaching his conclusion, the judge relied upon *United States v. Thomas,* 357 F.3d 357 (3rd Cir. 2004).

In *Thomas*, the Third Circuit affirmed the district court's findings that the defendant had forfeited and waived by conduct his right to counsel. 357 F.3d at 362–65. Thomas's retained counsel requested to withdraw based on nonpayment of fees. *Id.* at 359. Although Thomas opposed the motion to withdraw, he did question his counsel's ability to represent him. *Id.* The district court granted the withdrawal and, thereafter, eventually appointed four additional attorneys after they filed motions to withdraw based on a breakdown in communications and misconduct. *Id.* at 359–61. Thomas did not object to or oppose those motions. *Id.* During the course of the withdrawals and new appointments, the district court warned Thomas that his inappropriate actions such as making unreasonable demands, refusing to talk with counsel at times, withholding information, and being verbally abusive would be treated as an implied request to proceed *pro se* and explained the inherent risks of proceeding *pro se*. *Id.*

In affirming, the Third Circuit explained the difference between waiver and forfeiture of the right to counsel. It stated:

> [F]orfeiture and waiver are separate, distinct concepts. Waiver involves the intentional and voluntary relinquishment of a known right. Waiver of the right to counsel must be knowing, voluntary and intelligent. It is clear from the Supreme Court's decision in *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and this court's decision in *United States v. Welty,* 674 F.2d 185, 188 (3d Cir. 1982), that the district court must undertake an affirmative

on-the-record colloquy to explain to the defendant the possibility of waiver and give the defendant an awareness of the dangers and disadvantages inherent in defending oneself. A defendant's waiver of counsel can be deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary.

Although waiver most commonly is effected by an affirmative, verbal request to proceed *pro se,* waiver also may be effected by conduct. If the district court has warned the defendant that he will lose his attorney if he engages in dilatory misconduct, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel.

By contrast, *forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right.* A court may find that a defendant has forfeited his or her right to counsel after having engaged in extremely dilatory conduct or extremely serious misconduct. *Forfeiture can be found regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding pro se.*

*Id.* at 362 (cleaned up) (emphases added).

As an initial matter, Patton mentions that his right to counsel would not have been violated if the state trial court would have never granted Robinson's—his pro bono attorney—motion to withdraw before making sure that he had retained counsel, that the court had appointed new counsel upon a showing of indigency, or that he had properly waived his right to counsel. Under the circumstances of this case, his thinking, however, is misplaced. The courts in *Knox* and *Thomas* granted several motions to withdraw for various reasons, including a breakdown in communications—similar to the case between Patton and Robinson. At no point did Patton object to Robinson's withdrawal in September 2017, and he accepted the trial court's additional two months to hire new counsel after he requested time to do so. It was during this time that Patton failed to retain new counsel. On this record, there was no abuse of discretion in granting the motion to withdraw.

When asked about his representation at the pretrial hearing on January 22, 2018, which was four months after the state trial court granted Robinson's motion to withdraw, Patton requested appointed counsel because he did not accept any of the quoted retainer fees from prospective attorneys he sought to hire. The court then inquired about his income, and that is when he informed the court that he had won the lottery while on bond. He did not specify how much money he had won or had remaining from his winnings, but he did explain that he had remodeled his mother's home and had purchased several vehicles for his family and self. On that basis, the trial court did not find him indigent and stated that the trial would proceed in two weeks whether Patton had counsel or not because he had put himself in that position by failing to retain new counsel when he was financially capable of hiring one.

Before the start of trial in February 2018, the state trial court and parties addressed the matter again on the record, and that is when Patton clarified that he walked away with $680,000 in winnings around March 1, 2017, after he was arrested, formally charged, and released on bond. He stated that he "couldn't justify paying somebody . . . five digits . . . to talk about something they had no idea." (Doc. No. 4-8, pp. 116–17). Following a bit more discourse with the trial court, the court maintained its ruling that Patton was not indigent, and the trial proceeded. Despite the trial court not digging deeper into Patton's financial status, its line of questioning and Patton's responses at the pretrial hearing and prior to the start of trial suggested that Patton was financially able to obtain new counsel. He just chose not to hire one.

Patton argues that the state appellate court did not address the issue of whether he had waived his right to counsel regardless of the trial court's finding that he was not indigent. The undersigned is not inclined to review that issue *de novo* but instead applies the more restricted, deferential standard under 28 U.S.C. § 2254. The State conceded, and the appellate court

11

recognized that there was no valid waiver on the record after briefly discussing the Sixth Amendment's right-to-counsel jurisprudence. Thus, the waiver issue was addressed.

The undersigned agrees that Patton did not waive his right to counsel and views the forfeiture analysis applicable in this case. In other words, if there was no valid waiver and no finding of indigency, it was Patton's responsibility to hire counsel of his own choosing. Neither the trial court's decision nor the appellate court's affirmance that Patton forfeited his right to counsel at trial was based on an unreasonable determination of the facts in light of the evidentiary record.

Although Patton's conduct was not abusive or threatening, his inaction—refusing to retain counsel on the basis that he did not want to pay "five digits"—was not proper by any means. The state trial court relieved Robinson from representation in September 2017 and rescheduled the trial from October 2017 to February 2018. Simultaneously, the trial court directed Patton to retain counsel by November 2017, but Patton chose not to do so nor update the court at that time. After the November deadline, he still had about two months until his January pretrial hearing and almost three months until his February trial. Had he utilized that extra time to hire counsel, he could have requested a continuance until his new counsel had adequate time to review the case and prep for trial. That, however, was not the case here.

Under forfeiture, Patton gave up his right to counsel regardless of whether he knew that he was giving up that right, whether he intended to relinquish that right, and whether he had been warned and advised of the risks of self-representation. *See Thomas,* 357 F.3d at 362. Patton acknowledged that he was aware of the potential dangers in proceeding *pro se* when he stated that he understood that attorneys are more knowledgeable about court procedures and substantive matters, which was the reason why he requested appointed counsel after failing to hire his own

when given plenty of time to do so. So again, this case is not about whether Patton waived his right to counsel at trial; simply put, this is all about forfeiture of his right to counsel in every respect.

For clarity, the undersigned does not condone how the state trial court handled Patton's right to counsel, which is such a precious constitutional right. As Judge David Glover, of the Arkansas Court of Appeals, pointed out in his concurrence, "[n]o member of the bar or our judiciary should be under any illusion that the manner in which this case played out is to be considered the norm in dealing with such an important constitutional right as assistance of counsel." *Patton v. State*, 2019 Ark. App. 63, 9, 569 S.W.3d 906, 911 (2019) (Glover, J., concurring).

Even though Arkansas courts may not be required to complete affidavits of indigency according to state law, the routine practice of doing so is not onerous, and its importance is  nearly impossible to overstate when dealing with one's right to counsel. The state trial court here should have ascertained more information concerning Patton's income, assets, dependents, debts, and liabilities. The court could have also asked more about the number of prospective lawyers that Patton consulted with when searching for new counsel and could have also carefully warned Patton about the potential dangers of self-representation although not necessarily required under the forfeiture analysis.

Initially, it appears that the state trial court did display a cavalier attitude toward Patton during the pretrial hearing. It did, however, demonstrate a slightly better approach at the start of trial despite maintaining its ruling. This case is indeed a stark reminder of the courts' responsibility to avoid not only impropriety but the appearance thereof. That includes ensuring that defendants' rights are not impeded or infringed and that proceedings before the courts are fair.

Still, it cannot be ignored that Patton won at least $680,000 after taxes, roughly six months before his pro bono attorney, Robinson, withdrew from representing him. At that time, Patton had been formally charged with three counts of rape, was out on bond, and, two months after receiving his lottery winnings, was formally charged with two additional counts of incest. By his own admission, he chose to remodel a home and purchase vehicles with some of his winnings while claiming he did not want to pay "five digits" to an attorney to talk about matters that occurred between him and his son. Additionally, Patton was not forthcoming about the amount of money that he had remaining from the winnings. This is a classic example of forfeiture. Even if he had no cash left from his winnings, it would not have been unreasonable for the state trial court to conclude that he was not indigent due to his newly acquired assets.

Assuming Patton lacked a criminal history before being convicted in his underlying state trial, it is highly likely that he still knew the severity of the charges and the penalties that he faced, which would require effective assistance of counsel. Furthermore, once Robinson was relieved from representation, Patton did not proceed to trial immediately. There were almost five months between the time Robinson was relieved on September 18, 2017, to the start of Patton's trial on February 7, 2018. During those intervening months, the state trial court ordered him to retain counsel within two months of Robinson being relieved, scheduled a pretrial hearing for January 2018, and reset the trial from October 2017 to February 2018.

Why Patton did not try harder to find an attorney that he could retain in the time allowed is something the undersigned has pondered. Because the undersigned concludes that the state courts' determination that Patton forfeited his right to counsel was not based on an unreasonable determination of the facts and that their decision is supported by the evidentiary record, Patton's

motion for habeas relief should be denied. The fact that the state appellate court appointed Patton

counsel on appeal has no bearing on this recommendation.

**IV.    Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, a federal court must issue or

deny a certificate of appealability when entering a final order adverse to a petitioner. "A certificate

of appealability may issue . . . only if the applicant has made a substantial showing of the denial

of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, courts must determine

whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal

quotations omitted).

For the reasons stated herein, Patton has not made a substantial showing of the denial of

his right to counsel, so the undersigned does not recommend issuing a certificate of appealability.

**V.    Conclusion**

Based on the foregoing, the undersigned recommends that:

A.  Patton's habeas petition be **DENIED**.

B.  This case be **DISMISSED** with prejudice.

C.  A certificate of appealability be **DENIED**.

DATED THIS 29TH day of April, 2024.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE